IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In Re Maui Industrial Loan & Finance Company,<br><br>Debtor.<br>_____<br>DANE S. FIELD,<br><br>Plaintiff,<br><br>vs.<br><br>THE TRUST ESTATE OF ROSE KEPOIKAI, ET AL.,<br><br>Defendants.<br>_____ | CIVIL NO. 11-00552 LEK-KSC |

**ORDER DENYING WITHOUT PREJUDICE**
**DEFENDANTS' MOTIONS TO WITHDRAW REFERENCE**

Before the Court are two Motions to Withdraw Reference, filed September 12, 2011: (1) Defendants Robert E. Rowland, in his individual capacity and his capacity as Successor Trustee of The Trust Estate of Rose Kepoikai, and Robert E. Rowland Attorney at Law, a Law Corporation's (collectively "Rowland Defendants") Motion to Withdraw Reference to Bankruptcy Court ("Rowland Defendants' Motion"); and (2) Defendant Mancini, Welch & Geiger LLP's ("Mancini Law Firm") Motion to Withdraw the Reference of the Trustee's First Amended Complaint Filed June 30, 2011 ("Mancini Law Firm's Motion").  Trustee Dane S. Field ("Plaintiff" or "Trustee") filed his memoranda in opposition on November 7, 2011.  The Rowland Defendants and the Mancini Law

Firm filed their replies on November 14, 2011.  This matter came
on for hearing on November 28, 2011.  Appearing on behalf of the
Trustee were Bradley Tamm, Esq., and Lissa Schultz, Esq.,
appearing on behalf of the Rowland Defendants were Theodore
Young, Esq., and Jeffrey Portnoy, Esq., and appearing on behalf
of the Mancini Law Firm was Calvin Young, Esq.  After careful
consideration of the motions, supporting and opposing memoranda,
and the arguments of counsel, the Rowland Defendants' Motion and
the Mancini Law Firm's Motion are HEREBY DENIED WITHOUT PREJUDICE
for the reasons set forth below.  The parties are HEREBY DIRECTED
to file an appropriate motion renewing their request to withdraw
the reference when the bankruptcy court has resolved the core
claims and fraudulent transfer claims.

### BACKGROUND

In the Chapter 7 bankruptcy matter of debtor Maui
Industrial Loan & Finance Company, Inc. ("Maui Industrial"), the
Trustee brought an adversary proceeding (No. 10-90126) against
Defendants The Trust Estate of Rose Kepoikai ("Estate"),
Robert E. Rowland individually, and Robert E. Rowland, Attorney
at Law, a Law Corporation ("Roland ALC"), the Mancini Law Firm,
individual beneficiaries of the Estate ("Beneficiary
Defendants"), and Lloyd Kimura (collectively "Defendants").  The
Trustee's First Amended Complaint alleges that the bankruptcy
court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 1367,

and 11 U.S.C. §§ 544, 548, and 550.  He alleges that this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (C), (E), (H), and (O).  [First Amended Complaint at ¶¶ 9-10.[1]]

The First Amended Complaint further alleges that Mr. Kimura operated Maui Industrial as a Ponzi scheme. Mr. Kimura was appointed as the Successor Trustee of the Estate in 1987.  The Trustee alleges that, in 1989, Mr. Kimura, as Successor Trustee, invested $500,000 of the Estate's assets in Maui Industrial, and subsequently, invested additional assets. Between 1989 and 2000, Maui Industrial paid the Estate $3,106,907.32 on its investment.  The trust assets were distributed to the Beneficiary Defendants, until the last life estate income beneficiary died in 1994.  Despite the death of the last life estate income beneficiary, Mr. Kimura did not distribute the Estate trust assets to the Beneficiary Defendants or terminate the trust.  Mr. Kimura resigned as Successor Trustee in October 1999, at which point Mr. Rowland was appointed as Successor Trustee.  Mr. Rowland, Rowland ALC, and the Mancini Law Firm acted as legal counsel for Mr. Rowland in his capacity as Successor Trustee until 2002, at which point Mr. Rowland and Rowland ALC acted as legal counsel for Mr. Rowland in his capacity as Successor Trustee and for the Estate.   [First

---

[1] The First Amended Complaint is attached as Exhibit A to the Memorandum in Support of the Mancini Law Firm Motion, Declaration of Counsel.

Amended Complaint at ¶¶ 14-29.]

In February 2002, Mr. Rowland filed a petition for approval of an annual account for the Estate in the Second Circuit Court, indicating that Mr. Kimura owed various sums to the Estate.  The Rowland Defendants and the Mancini Law Firm secured the debt due to the Estate with assets belonging to Mr. Kimura and his spouse, recording a $756,500 mortgage against three parcels of property.  Mr. Kimura also drew several checks on Maui Industrial's bank account payable to the Estate totaling $1,477,669.71.  [Id. at ¶¶ 35-40.]  Mr. Rowland, Rowland ALC, and the Mancini Law firm made four distributions to the Beneficiary Defendants with checks drawn on the Mancini Firm's trust account from 2000 through 2004.  In 2005, the Second Circuit Court granted Mr. Rowland and Rowland ALC's motion requesting permission to deposit with the court all unclaimed funds from the Estate.  [Id. at ¶¶ 41-49.]

The First Amended Complaint alleges the following seven direct claims, seeking to avoid the transfers from Maui Industrial to the Defendants: (1) fraudulent transfer (11 U.S.C. § 548); (2) transferee liability (11 U.S.C. § 550); (3) state law fraudulent transfer (Haw. Rev. Stat. § 651C-4 ("HUFTA")); (4) strong arm powers (11 U.S.C. § 544); (5) unjust enrichment/ constructive trust; (6) aiding and abetting/participation in breach of fiduciary duty; and (7) Uniform Fiduciaries Act (Haw.

Rev. Stat. § 556-4). [Id. at ¶¶ 50-82.] The Trustee also alleges the following four causes of action, obtained by way of assignment ("assigned claims"): (1) negligent misrepresentation; (2) breach of fiduciary duty; (3) attorney malpractice; and (4) aiding and abetting/participation in breach of fiduciary duty. [Id. at ¶¶ 83-106.] Both the Rowland Defendants and the Mancini Law Firm demanded a jury trial in response to the First Amended Complaint.

I.   **Rowland Defendants' Motion**

The Rowland Defendants state that they have demanded a jury trial, have not consented to trial in bankruptcy court, have not filed any claims against the bankruptcy estate, do not consent to the bankruptcy court's entry of final judgment on any claims, and, therefore, under the circumstances, the case cannot be efficiently handled in bankruptcy court and the reference should be withdrawn. [Mem. in Supp. of Rowland Defs.' Mot. at 2.]

The Rowland Defendants' Motion explains that the original Complaint in the adversary proceeding did not include the four assigned claims. On May 6, 2011, United States Bankruptcy Judge Robert Faris granted the Trustee's motion to approve a settlement between the Trustee and three individual Beneficiary Defendants, which contained an assignment of claims. The First Amended Complaint filed on June 30, 2011 includes the

5

four assigned claims.  [Id. at 4-5.]

        The motion first argues that the Rowland Defendants are entitled to a jury trial, which may not be held in bankruptcy court.  The Rowland Defendants argue that the matter involves legal, rather than equitable, rights which entitles them to a jury trial under the Seventh Amendment.  They rely on Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989), which characterized fraudulent conveyance actions by bankruptcy trustees as "private rights," providing defendants with a right to a jury trial regardless of the fact that the action was a core proceeding.  Because they have not consented to a jury trial before the bankruptcy court, that court lacks the authority to conduct a jury trial, and they argue the reference should be withdrawn.  [Id. at 7-8.]

        Next, the Rowland Defendants argue that the bankruptcy court may not enter final judgment against them on the non-core proceedings, pursuant to 11 U.S.C. § 157(c)(1).  The Trustee's aiding and abetting breach of fiduciary duty claim, Haw. Rev. Stat. § 556-4 claim, and all of the assigned claims are state law claims that do not depend on the resolution of questions of bankruptcy law, and are non-core claims.  Further, under Stern v. Marshall, 131 S. Ct. 2594 (2011), they argue that a bankruptcy judge lacks authority to enter a final judgment on a claim that is traditionally adjudicated by Article III courts and does not

involve "public rights."   In this adversary proceeding, they argue that the fraudulent transfer claims are essentially common law claims that do not involve "public rights," and the bankruptcy court lacks constitutional authority to enter final judgment on these claims.  [Id. at 9-12.]

They maintain that, under the circumstances, the bankruptcy court has no authority to enter final judgment on any of the Trustee's claims against them, and can only enter proposed findings and conclusions subject to de novo review by this Court, which will result in duplication of judicial efforts and increased costs to the parties.  The Rowland Defendants argue that judicial economy is best served by having these claims decided by this Court.  [Id. at 12-14.]

Finally, the Rowland Defendants assert that the withdrawal of reference should not be delayed.  They acknowledge that the bankruptcy court may be permitted to retain jurisdiction over the action for pretrial matters.  They argue, however, that it is not clear that the bankruptcy court even has jurisdiction over the fraudulent conveyance claims.  Further, the bankruptcy court cannot enter final orders on dispositive motions, and can only enter proposed findings and conclusions to the district court for de novo review, which is not in the interests of judicial economy or efficiency.  The Rowland Defendants note that Judge Faris already dismissed portions of the Trustee's "core" 11

U.S.C. § 548 claim on statute of limitations grounds, thus, to the extent his bankruptcy expertise was needed, it is no longer needed.  The bankruptcy court's unique knowledge of Title 11 is not necessary to decide the eight state law claims of the ten remaining total claims.  [Id. at 15-17.]

A.   **Plaintiff's Memorandum in Opposition**

The Trustee argues in his opposition to the Rowland Defendants' Motion that: the demand for jury trial is not a basis for withdrawal and has been waived; the Stern decision does not provide a basis for withdrawal, and even if withdrawal is appropriate, it need not be immediate.

First, the Trustee argues that the demand for jury trial made for the first time after a pleading has been amended is effective only as to any new issues of fact raised in the amended pleading.  The Trustee believes that, although he asserts several new causes of action in the First Amended Complaint, there is no significant difference in the facts necessary to support his original claims and those supporting his new claims, and turn on the same matrix of facts.  [Mem. in Opp. to Rowland Defs.' Mot. at 5-9.]  The Trustee maintains that the Rowland Defendants are not entitled to a jury trial on any of the issues the Trustee asserted in the original Complaint.  [Id. at 10.]

Second, the Trustee argues that the Stern case does not apply here and that, even if it did apply, consideration of all

8

the factors articulated in <u>Stern</u> do not weigh in favor of withdrawal of the reference.  [<u>Id.</u> at 11-15.]

Finally, he argues that, even if withdrawal were appropriate, immediate withdrawal is not.  The bankruptcy court may retain jurisdiction for pre-trial matters, which does not abridge any Seventh Amendment right.  [<u>Id.</u> at 16-19.]

**B.   Rowland Defendants' Reply**

In their Reply, the Rowland Defendants state that the First Amended Complaint raised new factual issues absent from the original Complaint, including allegations that they instructed an accountant to misrepresent debts of Maui Industrial as debts of Mr. Kimura and that they knowingly accepted checks drawn on Maui Industrial's bank account in payment of the re-stated Kimura personal debt.  [Rowland Defs.' Reply at 3.]

They first argue that their jury demand is a basis for withdrawing the reference because they are entitled to a jury trial on all the new issues raised in the First Amended Complaint.  They do not concede that they waived any right to jury trial.  They argue that, although they did not file a jury demand with their answer to the original Complaint, they did file a general jury demand with respect to the First Amended Complaint, and that, a previously waived right to a jury trial may be revived by an amended pleading that raises new issues. [<u>Id.</u> at 5 (citing <u>Pradier v. Elespuru</u>, 641 F.2d 808, 810 n.1 (9th

Cir. 1981)).]  They argue that the allegations in the First
Amended Complaint are more than reworded allegations from the
original Complaint, but are the basis for the negligent
misrepresentation, breach of fiduciary duty, attorney
malpractice, and aiding and abetting participation in breach of
fiduciary duty claims.  The new facts are substantially different
and necessary to support the new causes of action.  Accordingly,
the Rowland Defendants argue that they are entitled to a jury
trial as to those new issues raised in the First Amended
Complaint.  [Id. at 6-7.]

       Next, they argue that the bankruptcy court's inability
to enter final orders and judgments against them is a basis for
withdrawing the reference.  The Rowland Defendants assert that
the Trustee's opposition does not directly dispute that the
bankruptcy court lacks such authority, but that this Court should
not weigh that factor heavily among the other factors in favor of
withdrawing the reference.

## II.  Mancini Law Firm's Motion

       In its motion, the Mancini Law Firm joins the Rowland
Defendants' Motion and requests that it be granted the same
relief requested therein.  It asks the Court to allow it to
defend against the unrelated, non-core state law claims for which
jury trial has been demanded in this Court.  It characterizes the
First Amended Complaint as seeking to recoup disbursements

authorized by the Probate Court to the Beneficiary Defendants
that were made more than ten years ago, because the disbursements
were allegedly the proceeds of Maui Industrial's Ponzi scheme.
Rowland and the Mancini Law Firm are sued in order to obtain the
same recovery of disbursements sought from the Beneficiary
Defendants under the theory that Rowland and the Mancini Law firm
were "initial transferees" of the funds invested by Mr. Kimura.
[Mem. in Supp. of Mancini Law Firm Mot. at 2-3.]

        The First Amended Complaint alleges that Mr. Rowland
deposited transfers from Maui Industrial into the Mancini Law
Firm's client trust account for purposes of distribution to the
Beneficiary Defendants.  The Mancini Law Firm argues that it was
not a trustee of the Estate, was not a "payee" of the transfers,
never asserted any dominion or control over the funds, and only
served as co-counsel to Mr. Rowland.  It believes that the
Trustee has sued it purely because Rowland deposited the Maui
Industrial loan proceeds into its trust account.  [Id. at 4.]

        It argues that, under bankruptcy law, funds deposited
into an attorney's client trust account do not become the
personal property of the attorney, and as such, merely depositing
funds into a lawyer's client trust account does not make the
lawyer or its law firm an "initial transferee" from whom the
disputed transfers can be collected (i.e., "clawback").  It
argues that it never owned the disputed funds and was not an

11

initial transferee.   The only potential liability to Plaintiff
would arise under the state law tort claims alleged in the First
Amended Complaint; none of these causes of action involve the
process of resolving a creditor's proof of claim.   [<u>Id.</u> at 5-7.]
The Mancini Law Firm asserts that the Trustee

> seeks to improperly litigate state tort claims in
> Bankruptcy Court, denying the Mancini Law Firm of
> its right to a jury trial, and strategically
> burdening the Mancini Law Firm with excess
> attorneys' fees and costs associated with
> litigating the state law claims twice. . . .  This
> is a strong arm tactic to coerce a settlement from
> uninvolved third-parties in order to fund the on-
> going bankruptcy litigation.

[<u>Id.</u> at 7.]

The Mancini Law Firm argues that this proceeding is
principally non-core: the unrelated state law tort claims were
not brought by creditors or by adversary proceeding defendants as
a counterclaim against the bankrupt estate; do not involve the
same issues relating to the process of allowance or disallowance
of claims; and involve matters of private contract between third-
persons other than the debtors and creditors.   The Mancini Law
Firm cites the <u>Stern</u> decision for the proposition that the
bankruptcy court lacks constitutional authority to adjudicate
state law claims that are not resolved in the process of ruling
on a creditor's proof of claim.   Inasmuch as the resolution of
the claims for negligent misrepresentation, breach of fiduciary
duty, attorney malpractice, aiding and abetting/participation in

breach of fiduciary duty between the Mancini Law Firm and the small number of individual beneficiaries who have settled their "clawback claims" are not related to the process of ruling on a creditor's proof of claim, the Mancini Law Firm argues that it is constitutionally entitled to a jury trial in district court.  It has not consented to have these state law non-core claims litigated in bankruptcy court.  [Id. at 8-10.]

Last, it argues that judicial economy and substantial prejudice to it require the withdrawal of the reference.  It argues that, because the action is non-core, legal (not equitable), triable by a jury, and unrelated to the process of ruling on a creditor's proof of claim, and the bankruptcy court is not authorized to issue final judgment as to the state law claims, those claims will have to be relitigated in the district court de novo.  It argues that issues of judicial economy and prejudice substantially weigh in favor of withdrawing the reference.  [Id. at 13-14.]

### A.   **Plaintiff's Memorandum in Opposition**

As in his opposition to the Rowland Defendants' Motion, the Trustee argues that the demand for jury trial is not a basis for withdrawal and has been waived, the Stern decision does not provide a basis for withdrawal, and even if withdrawal is appropriate, it need not be immediate.

First, the Trustee argues that the demand for jury

13

trial made for the first time after a pleading has been amended is effective only as to any new issues of fact raised in the amended pleading.  The Trustee believes that, although he asserts several new causes of action in the First Amended Complaint, there is no significant difference in the facts necessary to support his original claims and those supporting his new claims, and turn on the same matrix of facts.  [Mem. in Opp. to Mancini Law Firm Mot. at 4-9.]  The Trustee maintains that the Mancini Law Firm is not entitled to a jury trial on any of the issues the Trustee asserted in the original Complaint.  Further, it has not filed a motion seeking a jury trial on any of the issues raised in the original Complaint.  [Id. at 10.]

Second, the Trustee argues that the Stern case does not apply here and that consideration of all the factors do not weigh in favor of withdrawal of the reference.  He also argues that the Mancini Law Firm is wrong when it asserts that the proceeding is not "core."  Further, the Mancini Law Firm has not raised the Stern issue before the bankruptcy court in the first instance.  [Id. at 11-15.]

Finally, he argues that, even if withdrawal were appropriate, immediate withdrawal is not.  The bankruptcy court may retain jurisdiction for pre-trial matters, which does not abridge any Seventh Amendment right.  [Id. at 16-19.]

14

B.   **Mancini Law Firm's Reply**

In its Reply, the Mancini Law Firm emphasizes that its motion seeks only to withdraw from the jurisdiction of the bankruptcy court the four assigned claims for negligent misrepresentation, breach of fiduciary duty, attorney malpractice, and aiding and abetting/participation in breach of fiduciary duty.  [Mancini Law Firm Reply at 9.]  It states that the Trustee's core "clawback" claims should not be coupled with the non-core state law claims for legal malpractice.  Prior to the assignment of the state law claims, the Trustee's claims were limited to the theory that the Mancini Law Firm was an initial transferee of the funds passing through its client trust account, but argues that this theory has been squarely repudiated by courts.  It claims that its motion is to partially excise the ancillary and unrelated non-core claims from the bankruptcy court action.  [Id. at 2-4.]

The Mancini Law Firm asserts that the Trustee does not dispute that his assigned claims are non-core and do not involve the application of bankruptcy law.  It argues that the Trustee is trying to collect on a malpractice insurance policy covering "a speculative claim against third parties owned by the *debtors of the Debtor* on behalf of the Creditors."  [Id. at 8.]

To the extent the Trustee argues that the Mancini Law Firm "waived" its right to jury trial on the assigned non-core

15

claims, the Mancini Law Firm asserts that the argument is misplaced because the Trustee did not possess those claims at the time he filed his original Complaint on October 17, 2010.  The original Complaint makes no allegations of an attorney-client relationship, or any breach thereof, between the Mancini Law Firm and any other party.  It argues that there were no factual allegations to put it on notice that the Trustee was asserting legal malpractice and other common law tort claims that he did not possess.  The Mancini Law Firm timely filed its jury demand with its answer to the First Amended Complaint on July 15, 2011. It argues that it cannot have waived a right to demand a jury trial on claims that had not yet been asserted at the time of answering the original Complaint.  [Id. at 5-6.]

It last argues that the balancing test set forth in § 157(d) favors withdrawal of the reference.  The claims here are non-core, legal, triable by jury, and unrelated to the process of ruling on a creditor's proof of claim, not involving the bankruptcy court's unique knowledge of Title 11.  Further, the issues will be relitigated de novo in district court, hence, issues of judicial economy and prejudice substantially weigh in favor of withdrawal.  The Mancini Law Firm argues that it is a stranger to the bankruptcy proceeding and is not an initial transferee, and should not be compelled to litigate in the bankruptcy court.  [Id. at 12-14.]

Moreover, it argues that this case involves a matter of first impression, which is inappropriate for adjudication by the bankruptcy court.  The issue of whether claims for legal malpractice can be assigned has not been decided in this jurisdiction.  It maintains that the Hawai'i Supreme Court has not recognized the validity of attempted assignments for claims of legal malpractice; the weight of authority from other jurisdictions is that such claims are personal and are not assignable, or subject to prosecution in bankruptcy court.  [Id. at 3 n.1, 13 (citing cases).]

## STANDARD

In general, district courts have original and exclusive jurisdiction over all bankruptcy matters, 28 U.S.C. § 1334, and may refer all bankruptcy matters to a bankruptcy court.  28 U.S.C. § 157(a).  Pursuant to Local Rule ("LR") 1070.1(a), "all cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the bankruptcy judges of this district."

The court may nonetheless withdraw the reference to the bankruptcy court pursuant to 28 U.S.C. § 157(d), which provides:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

"The party bringing a motion to withdraw the reference to the bankruptcy court bears the burden of persuasion." <u>Field v. Levin</u>, 2011 WL 3477101, at *2 (D. Haw. Aug. 8, 2011) (citing <u>Hawaiian Airlines, Inc. v. Mesa Air Grp.</u>, Inc., 355 B.R. 214, 218 (D. Haw. 2006)).

<u>In re Mortgage Store, Inc.</u>, Civil No. 11-00439 JMS/RLP, 2011 WL 5056990, at *2-3 (D. Hawai'i Oct. 5, 2011).

## DISCUSSION

At the hearing on the motions, the Trustee acknowledged that the non-core claims were properly before this Court, but argued that the timing of withdrawal was not proper at this time. The Trustee argued that the bankruptcy court should be permitted to rule on core matters relating to the underlying Ponzi scheme, including fraudulent transfer claims, before withdrawing the reference.  Defendants disagreed and urged the Court to withdraw the reference immediately.

To the extent that the claims in the First Amended Complaint are core matters, the Court agrees with the Trustee that they should be addressed by the bankruptcy court in the first instance.

In determining whether cause for permissive withdrawal exists, the Court may consider: (1) whether the proceeding is core or non-core; (2) whether the claim is legal or equitable; (3) the most efficient use of judicial resources; (4) whether the claim is triable by jury; (5) reduction of forum shopping; (6) conversion of estate and non-debtor resources; and (7) uniformity of bankruptcy administration.

The determination of whether claims are core

18

> or non-core is not dispositive of a motion to
> withdraw a reference, but characterization of the
> claims as core or non-core is useful before
> considering the other factors. . . .  The
> existence of core matters weighs in favor of
> resolution of the adversary proceeding by the
> bankruptcy court.

Hawaiian Airlines, Inc. v. Mesa Air Group, Inc., 355 B.R. 214,

223 (D. Hawai'i 2006) (some citations omitted).

To the extent Defendants seek withdrawal on the ground

that they are entitled to a jury trial on certain state law

claims, the Court FINDS that it need not withdraw the reference

immediately.  As this district court recognized in Field v.

Levin:

> The court need not decide at this time
> whether Defendants have waived their right to a
> jury trial because, issues of waiver
> notwithstanding, there is no good cause to
> transfer the matter to the district court at this
> time.  The bankruptcy court may conduct a jury
> trial only "with the express consent of all the
> parties." 28 U.S.C. § 157(e).  But even if a
> party does not consent, a "valid right to a
> Seventh Amendment jury trial in the district court
> does not mean the bankruptcy court must instantly
> give up jurisdiction and that the action must be
> transferred to the district court." In re
> Healthcentral.com, 504 F.3d 775, 788 (9th Cir.
> 2007).  The Ninth Circuit has held that it is
> appropriate for the bankruptcy court to "retain
> jurisdiction over the action for pre-trial
> matters." Id. **Accordingly, even when withdrawal
> of the reference may ultimately be necessary, the
> court need not withdraw the reference immediately.**
> The Ninth Circuit emphasized that there are two
> reasons for leaving the case with the bankruptcy
> court for resolution of pretrial matters.  First,
> allowing the bankruptcy court to retain
> jurisdiction does not abridge a party's Seventh
> Amendment right to a jury trial. Id. at 787.

19

"Second, requiring that an action be immediately transferred to district court simply because of a jury trial right would run counter to our bankruptcy system." Id.  The current system "promotes judicial economy and efficiency by making use of the bankruptcy court's unique knowledge" of bankruptcy law as well as its familiarity with the action before it.  Id. at 787-88.  Accord Nat'l Hockey League v. Moyes, 2010 WL 3719289, at *2 (D. Ariz. Sept. 15, 2010) ("The majority of courts in this District addressing this issue have held that bankruptcy courts generally are best equipped to manage all pretrial issues and that the ultimate need for district court adjudication is speculative.").

Transfer of this case would be premature at this time.  The main causes of action alleged in this adversary proceeding are fraudulent transfer claims, which are core bankruptcy matters. **Because of the bankruptcy court's unique expertise in such matters, it would be an inefficient allocation of judicial resources to withdraw the claims at this time.**  Withdrawing the action would also be wasteful of the parties' resources and jeopardize the uniformity of bankruptcy administration, because both the district court and bankruptcy court would have to become familiar with facts about the estate and make determinations regarding the parties' rights and obligations.

This case is in its early stages. . . . Leaving adjudication of this case with the bankruptcy court means that the discovery issues, settlement conferences, and motion practice will be supervised in this adversary proceeding most efficiently by the same court that is currently supervising the other adversary proceedings filed in connection with the bankruptcy estate.

Should a jury trial ultimately be warranted and necessary, Defendants may again seek to withdraw the action to this court after all pretrial matters have been resolved in the bankruptcy court.  See In re Healthcentral.com, 504 F.3d at 788 ("Only by allowing the bankruptcy court to retain jurisdiction over the action until

trial is actually ready do we ensure that our
bankruptcy system is carried out"). <u>Cf. Lattig v.
820 Mgmt. Trust</u> (<u>In re Lake at Las Vegas Joint
Venture, LLC</u>), Nos. 2:10-cv-1679-GMN-PAL,
2:10-cv-1680-GMN-PAL, 2011 WL 1303216, at *4 (D.
Nev. Mar. 31, 2011) (denying motion to withdraw
reference as premature because issues upon which
Defendant sought jury trial were not yet ripe for
trial); <u>Hawaiian Airlines, Inc.</u>, 355 B.R. at
224-25 (same).

<u>Field v. Levin</u>, Civil No. 11-00394 SOM/BMK, 2011 WL 3477101, at

*3-4 (D. Hawai'i Aug. 8, 2011) (emphasis added).

The Court agrees with the reasoning in <u>Levin</u> and FINDS

that the bankruptcy court is the appropriate forum at this stage,

and that transfer would be premature at this time. Specifically,

because of the bankruptcy court's unique expertise, it would be

an inefficient allocation of judicial resources to withdraw the

reference at this time. The Court is cognizant of Defendants'

concerns that they may be bound by certain bankruptcy court

findings with respect to the assigned state-law claims. The

Trustee, however, represented at the hearing that the fraudulent

transfer claims and the non-core state-law claims were likely not

intertwined, and that there would be no *res judicata* or

preclusion issues upon the eventual withdrawal of those claims to

this Court.

To the extent Defendants argue that the recent holding

in <u>Stern v. Marshall</u> means that the bankruptcy court lacks the

authority to enter final judgment on all of the claims in the

First Amended Complaint, the Court is not persuaded that cause

exists for immediate withdrawal of the reference. As this district court explained in In re Mortgage Store:

> Stern addressed the constitutionality of
> bankruptcy courts entering judgments on a
> different type of core proceeding — "counterclaims
> by the estate against persons filing claims
> against the estate." 11 U.S.C. § 157(b)(2)(C).
> Stern described this question as a "narrow" one,
> and held that Congress exceeded its constitutional
> authority "in one isolated respect" in granting
> bankruptcy courts the right to enter judgment on
> such counterclaims. [Stern, 131 S. Ct. 2594,]
> 2620. Specifically, Stern held that the
> bankruptcy courts "lacked the constitutional
> authority to enter final judgment on a state law
> counterclaim that is not resolved in the process
> of ruling on a creditor's proof of claim." Id. at
> 2620.

2011 WL 5056990, at *3 (footnote omitted). Similar to the instant case, the defendants in In re Mortgage Store argued that Stern "has called into question this entire scheme such that the bankruptcy court does not have jurisdiction to determine Plaintiff's fraudulent conveyance claims and withdrawal of reference is therefore mandatory." Id. The district court explained that:

> Stern only addresses a bankruptcy court's
> jurisdiction to enter a judgment, as opposed to
> findings and recommendations, on a core proceeding
> over which it has no constitutional authority to
> enter a final judgment. Indeed, Stern discussed
> only whether the bankruptcy court could enter a
> final judgment; it did not express any opinion
> regarding whether the bankruptcy court has
> authority to conduct pretrial proceedings and
> submit findings and recommendations. And even if
> the bankruptcy court does not have jurisdiction to
> enter a final judgment on the fraudulent transfer
> claims, mandatory withdrawal of the reference is

> inapplicable if the bankruptcy court retains the
> ability to enter a finding and recommendation on
> these claims.

Id. at *5.  This Court agrees with the district court's

conclusion that, "even if the bankruptcy court does not have

jurisdiction to enter a final judgment on the fraudulent

concealment claims-an issue this court need not decide at this

time-the bankruptcy court may enter findings and

recommendations."  Id. at *6 (footnote omitted).  Further, the

Court is not persuaded, on the current record, that the Ninth

Circuit's recent order inviting supplemental briefing by amicus

curiae in In re Bellingham Insurance Agency, No. 11-35162 (9th

Cir. Nov. 4, 2011), mandates a contrary conclusion.

At this time, the Court, in its discretion, FINDS that

neither judicial economy nor substantial prejudice to Defendants

require the immediate withdrawal of the reference.  Withdrawal of

the reference at this stage would result in this Court losing the

benefit of the bankruptcy court's experience in both the law and

facts, and leading to an inefficient allocation of judicial

resources.  See Birdsell v. Schneider, No. CV-11-0484-PHX-FJM,

2011 WL 1540145, at *2 (D. Ariz. Apr. 22, 2011) ("[E]ven where

withdrawal of the reference may ultimately be necessary, we may

choose not to withdraw immediately so as to take advantage of the

bankruptcy court's familiar[ity] with the facts and expertise in

the law.").  Given these considerations, at this time, Defendants

have not established cause for immediate withdrawal of the reference.  Accordingly, the Rowland Defendants' Motion and the Mancini Law Firm's Motion are DENIED WITHOUT PREJUDICE.

Based on the Trustee's representations that discovery is due shortly, that he will be filing a motion for summary judgment on core matters, including fraudulent transfer claims, and that such matters are ripe for the bankruptcy court's determination, the Court will allow the adversary proceedings to go forward in the bankruptcy court at this time.  Upon resolution of these core matters, the parties may file a renewed motion to withdraw the reference with respect to the remaining claims.

## CONCLUSION

On the basis of the foregoing, the Rowland Defendants' Motion and the Mancini Law Firm's Motion, both filed September 12, 2011, are HEREBY DENIED WITHOUT PREJUDICE.  The parties are HEREBY DIRECTED to file an appropriate motion renewing their request to withdraw the reference when the bankruptcy court has sufficiently resolved the core matters, including the fraudulent transfer claims.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 29, 2011.



    /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**DANE FIELD V. TRUST ESTATE OF ROSE KEPOIKAI, ET AL; CIVIL NO. 11-00552 LEK-KSC; ORDER DENYING WITHOUT PREJUDICE DEFENDANTS' MOTIONS TO WITHDRAW REFERENCE**